**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,<br><br>      Post-Effective Date Debtors. | NOT FOR PUBLICATION<br><br>Case No. 22-10964 (MG)<br><br>Chapter 11 |
| MOHSIN Y. MEGHJI, Litigation Administrator as Representative for the Post-Effective Date Debtors,<br><br>      Plaintiff,<br><br>v.<br><br>LEAH RACHEL *CROCKER*<br><br>      Defendant. | Adv. Proc. No. 24-02130 (MG) |

**MEMORANDUM OPINION AND ORDER DENYING CROCKER'S MOTIONS TO STRIKE MEDIATOR'S SELECTION AND STAY MEDIATION**

*A P P E A R A N C E S*:

LEAH RACHEL CROCKER
*Pro Se*

WHITE & CASE LLP
*Attorneys for Litigation Administrator*
1221 Avenue of the Americas
New York, New York 10020
By:    Samuel P. Hershey, Esq.
           David M. Turetsky, Esq,
           Lucas Curtis, Esq.
           Nikita Ash, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are two motions filed by Leah Rachel Crocker ("Crocker"). The first is the *Motion to Strike Notice of Selection of Mediator and Enforce Voluntary Mediation Agreement* (the "Strike Motion," ECF Doc # 7) requesting that the Court permit Crocker (i) to engage in voluntary mediation and cease all mandatory mediation efforts by the Litigation Administrator; (ii) permit Crocker to strike the selection of mediator filed by the Litigation Administrator; (iii) require the Litigation Administrator to pay Crocker's portion of mandatory mediation fees. (*See* Strike Motion ¶¶ 1-4.) The Litigation Administrator filed the *Plaintiff's Opposition to Defendant's Motion to Strike Notice of Selection of Mediator and Enforce Voluntary Mediation Agreement* (the "Opposition to the Strike Motion," ECF Doc. # 13) arguing Crocker's Strike Motion violated the *Order Granting the Revised Motion to Establish Streamlined Procedures Governing Avoidance Actions Pursuant to Sections 502, 547, and 550 of the Bankruptcy Code* (the "Procedures Order," Adv. Pro. No. 24-04024, ECF Doc. # 36).

The second is the *Motion to Stay Mediation* (the "Stay Motion," ECF Doc # 14) seeking to stay mediation until this court rules on the Strike Motion. The Stay Motion was filed on December 24, 2025. (Stay Motion at 1.) The Litigation Administrator filed the *Plaintiff's Limited Opposition to Defendant's Motion to Stay Mediation* (the "Limited Opposition to Stay Motion," or "Limited Opposition," ECF Doc # 17) on January 8, 2026. The Limited Opposition to the Stay Motion asserts that the relief sought in the Stay Motion is likely moot because the Litigation Administrator is willing to delay mediation to provide Crocker with additional time to select a mediator and the option of individual mediation. (Limited Opposition at 3.)

For the reasons discussed, the Court **DENIES** both the Strike Motion and Stay Motion.

2

# I. BACKGROUND

The Litigation Administrator filed this adversary proceeding on July 3, 2024, seeking to avoid transfers pursuant to sections 547 and 550 of the Bankruptcy Code. (Limited Opposition at 3.) This Court entered the Procedures Order on November 7, 2024. (*Id.*) The Court issued the *Memorandum Opinion and Order on Phase One Issues* (the "Phase One Opinion," Case No. 24-20420, ECF Doc. #77) on July 29, 2025. (*Id.*) Pursuant to the Procedures Order, the Phase One Opinion triggered the mandatory mediation start date of October 2, 2025, and the Hardship Application [1] deadline of twenty-one days before, or September 11, 2025. (*Id.* at 4.)

On October 31, 2025, the Litigation Administrator filed the *Notice of Selection of Mediator* (ECF Doc. # 6) requesting the Court's permission to select Christopher Battaglia ("Battaglia") as mediator during mandatory mediation per the provisions of the Procedures Order. (*See Notice of Selection of Mediator* at 2.) On November 19, 2025, Crocker filed the Strike Motion, asserting that she is entitled to voluntary mediation and has already participated in voluntary mediation, urging the Court to grant selection of a new mediator, and requesting the Litigation Administrator pay Crocker's share of any mandatory mediation fees. (*See* Strike Motion ¶¶ 1-4.) On December 17, 2025, the Litigation Administrator filed the *Notice of Scheduling of Mediation* (ECF Doc. # 11) scheduling the mandatory mediation for January 13, 2026. (*See Notice of Scheduling of Mediation* at 2-3.) The Litigation Administrator replied to the Strike Motion on December 22, 2025, claiming that Crocker's pleadings violate the requirements of the Procedures Order. (*See* Procedures Order ¶¶ 1-2.) On December 30, 2025, Crocker filed the *Motion in Response to Plaintiff's Opposition to Defendant's Motion to Strike*

---

[1] The Procedures Order provides that Defendants facing financial hardship may apply to the Court for a full or partial waiver of their portion of the mediation fees in a document that includes supporting evidence of the application's financial hardship. (Procedures Order, Exhibit 2, ¶ 5.)

3

*Notice of Selection of Mediator and Enforce Voluntary Mediation Agreement* (the "Response"), echoing the pleadings and arguments made in the Strike Motion.

On December 23, 2025, Crocker filed the Stay Motion seeking a stay of mediation until the Court rules on the Strike Motion. (Stay Motion at 3.) The Litigation Administrator responded by stating he was willing to grant Crocker additional time to select a mediator and to participate in individual mediation, rendering the requested relief moot. (Limited Opposition at 3.)

## II.    LEGAL STANDARD

The Procedures Order governs and establishes procedures for resolving Celsius avoidance actions through mediation. (*See* Procedures Order, Exhibit 2.) The Procedures Order splits the mediation into two phases. (*Id.* at 1-2.) Each phase addresses specific issues and has different schedules and procedures for briefing and discovery.[2] (*Id.*)

The Procedures Order set a moratorium of 120 days after the entry of the Proposed Order to permit parties to engage in voluntary mediation. (*Id.* at 1.) Parties can engage in voluntary mediation at any point during Phase One. (*Id.* at 2.) Unless the parties mutually agree to other procedures, voluntary mediation will be governed by the Procedures Order. (*Id.*) If a defendant does not engage in voluntary mediation or the avoidance action is not otherwise resolved, then the defendant must participate in mandatory mediation. (*Id.* at 3.)

---

[2] Phase one issues included and are limited to: whether the presumption against extraterritoriality applies to the Avoidance Actions, and if so, whether 11 U.S.C. § 547 can be applied extraterritorially; whether the court has specific personal jurisdiction over the Defendants with respect to the Avoidance Actions; and whether the definition of "Withdrawal Preference Exposure" in the Plan controls, or whether 11 U.S.C. §§ 547(c) and 550 instead govern, for purposes of calculating the Defendants' potential liability in the Avoidance Actions.

Phase two issues include and are limited to: whether the Litigation Administrator's claims are barred by the ordinary business terms under 11 U.S.C. § 547(c)(2)(B); whether the Litigation Administrator's claims are barred by the safe harbor defense under 11 U.S.C. § 546 (e); whether any Defendant can overcome the presumption of insolvency during the preference period' and any "phase one" issue that the Court concludes requires evidentiary development, as well as any additional issue for which the Court grants leave to be raised in phase two.

After the mediation start date, the Defendant and the Litigation Administrator must jointly select a mediator from a list of designated mediators. (*Id.* at 3-4.) Where the parties elect to mediate outside the continental United States or Canada, they are permitted to jointly choose a mutually acceptable mediator from outside the designated list. (*Id.* at 4.) If the parties cannot agree on a mediator within thirty days of the mandatory mediation start date, the Litigation Administrator shall ask the Court to appoint a mediator from the designated list. (*Id.*) The Litigation Administrator shall pay for sixty percent of the mediation costs, and the defendants will be responsible for the remaining forty percent. (*Id.*) Defendants experiencing financial hardship may request that the Court grant a full or partial waiver of their share of mediation costs. (*Id.* at 5.) Hardship applications must include evidence to support the defendant's financial hardship. (*Id.*) Opposition to a hardship application must be made within seven days after an application is filed. (*Id.*)

## III.    DISCUSSION

### A. Strike Motion

#### 1. Crocker Must Participate in Mandatory Mediation

Crocker claims that she registered for and participated in voluntary mediation and, consequently, is exempt from mandatory mediation and is entitled to yet further voluntary mediation. (Strike Motion at 2-4.) The Litigation Administrator, on the other hand, claims that Crocker failed to participate in voluntary mediation and informed her, on October 29, 2025 and October 30, 2025, that she had not yet participated. (Strike Motion, Exhibit A.) Yet, Crocker mistakenly claims, in both her Strike Motion and Response, that she has participated in voluntary mediation. (Strike Motion at 2; Response at 1.) This is not the case. Crocker has provided no evidence of her alleged participation and acknowledged in the Strike Motion that there is no

5

24-02130-mg    Doc 20    Filed 03/06/26    Entered 03/06/26 14:02:18    Main Document
Pg 6 of 11

record of her participating in voluntary mediation. (*See* Strike Motion, Exhibit A.) Instead, Crocker requested to participate in a group mediation held on October 30, 2025. (*See* Strike Motion, Exhibit A.) Therefore, Crocker has failed to demonstrate her alleged prior participation in voluntary mediation.

The Procedures Order permits commencing voluntary mediation during Phase One. (Procedures Order, Exhibit 2.) Phase One ended 120 days after the entry of the Procedures Order, thus, the deadline to commence voluntary mediation was March 7, 2025. (Procedures Order, Exhibit 2.) Next, during Phase Two, mandatory mediation begins "35 days following the deadline for responses to complaints." (Procedures Order, Exhibit 2, at 3.) The Procedures Order further provided that the deadline to respond to complaints was 30 days after the Court rules on Phase One issues. (*Id.* at 2.) The Court issued a ruling on the Phase One issues in the Phase One Opinion on July 29, 2025; therefore, the deadline to respond to the complaint was August 28, 2025, and the mandatory mediation period for Crocker began on October 2, 2025.

Crocker contends that she registered for and participated in voluntary mediation with TDMR Amsterdam group on April 8, 2025. (Strike Motion, Exhibit A, at 2.) This contention fails as well. First, it is impossible to register for voluntary mediation on this date, as the deadline to commence voluntary mediation concluded approximately one month before on March 7, 2025. Second, per the Opposition to the Strike Motion, Crocker did not register for the TDMR Amsterdam mediation until after that mediation had concluded, thus Crocker has not yet participated in any mediation. (*See* Opposition to the Strike Motion, Exhibit A, Exhibit B.) Crocker has additionally failed to provide any evidence of her own to demonstrate her participation in voluntary mediation. Furthermore, the Litigation Administrator informed Crocker that (i) the TDMR Amsterdam group mediation had concluded and (ii) that the TDMR

6

Amsterdam group mediation was only for members of the DOF Group of creditors, making Crocker ineligible to participate in the TDMR Amsterdam mediation as she is not a member of that group. (*Id.*) Therefore, because there is a lack of evidence of Crocker's participation in voluntary mediation, and the time to participate in voluntary mediation has elapsed, Crocker must participate in mandatory mediation per the requirements of the Procedures Order.

2. Selection of Mediator is Proper

Crocker baselessly contends that (i) the Litigation Administrator is "falsely" displaying her consent to selection of mediator and, (ii) the Litigation Administrator has "unilaterally" and, therefore, improperly selected a mediator for voluntary mediation. (Strike Motion, at 3.) This claim fails as well. The Litigation Administrator's selection of Battaglia as mediator complies with the requirements laid out by the Procedures Order.

The Procedures Order requires that, if parties are unable to agree on a Mediator within 30 days from the onset of the period requiring mandatory mediation, the Litigation Administrator "shall request that the Court appoint a Mediator from the Mediator List." (Procedures Order, Exhibit 2 at 4.) On October 31, 2025, both Crocker and the Litigation Administrator had discussed but *had not agreed on selection of mediator*. (*See* Strike Motion, Exhibit A; Opposition to the Strike Motion, Exhibit B.) The last communication between the parties, dated October 30, 2025, noted that Crocker would "plan to participate in voluntary mediation in Q1 2026" and the Litigation Administrator affirmed 2026 as a target date for scheduling. (Strike Motion, Exhibit A.) Crocker then provided several dates for a proposed mediation, however, these dates offered by Crocker would have exceeded the deadlines set by the Procedures Order. In response, the Litigation Administrator filed the *Notice of Selection of Mediator* on October 31, 2025, to comply with the 30-day deadline imposed by the Procedures Order. The Procedures

7

Order provides that the Court has final review over the appointment of mediator; while the appointment described above comports with the requirements of the Procedures Order, the Court may permit certain modifications regarding this appointment.[3]

Finally, by selecting Battaglia as mediator, the Litigation Administrator further complies with the Procedures Order. Battaglia appears on the "Proposed Mediator" list within the Procedures Order. (*See Notice of Selection of Mediator* at 2; *see also* Procedures Order, Exhibit 3 ¶ 2.) Therefore, the Litigation Administrator's selection of mediator also complies with the requirements set forth by this Court in the Procedures Order.

### 3. Crocker is Not Entitled to Payment of Mandatory Mediation Fees

Crocker additionally requests that, should the Litigation Administrator "renege" on the "agreement" they have reached, that the Litigation Administrator must in turn pay Crocker's mandatory mediation fees. (Strike Motion ¶ 3.) While the Procedures Order permits the Litigation Administrator to pay creditors' mediation fees, it only does so if a creditor pleads sufficient "financial hardship" in a hardship application. (*See* Procedures Order, Exhibit 2 at 5.) Crocker has not filed a hardship application, and her pleadings do not mention the "financial hardship" described by the Procedures Order; instead, she appears to be confused by the mediation requirements of the Procedures Order. Therefore, Crocker's request that the Court order the Litigation Administrator to pay Crocker's portion of the mandatory mediation fees is denied.

---

[3] The Litigation Administrator is willing to grant Crocker additional time select a different mediator, engage in individual mediation, and to schedule Crocker's request for mediation in the first quarter of 2026. (Limited Opposition at 8.) While the Court may properly grant this proposed compromise, the Litigation Administrator correctly notes that this creates precedent that would encourage other creditors who fail to abide by the Procedures Order to receive preferential relief. (*Id.* at 7.)

### B. Stay Motion

Crocker requests that the Court stay mediation until it rules on the Strike Motion. (Stay Motion at 3.) Crocker argues that mediation should not be scheduled yet because the Court has not determined whether mandatory mediation is required or whether Battaglia is the mediator. (*Id.*) In addition, Crocker asserts that she had no input into the scheduling of the mediation and previously indicated she did not want to participate in group mediation. (*Id.*) Crocker also argues that she would be deprived of her opportunity to be heard if mediation proceeds before the Court rules on her Strike Motion. (*Id.*) Crocker further asserts that even if the Court determines mediation with Battaglia is required, it can be rescheduled any time before the end of April 2026 and still comply with the Procedures Order, which stipulates that mandatory mediation must be completed within 180 days after the filing of the Notice of Mediator Selection. (*Id.*)

The Litigation Administrator asserts that the relief sought by Crocker is likely moot because the Litigation Administrator is willing to engage in individual mediation with Crocker and to grant her additional time to select a mediator. (Limited Opposition at 3.) In addition, the Litigation Administrator notes that because he is willing to grant Crocker additional time to select a mediator, some issues in the Strike Motion are also moot. (*Id.*) The Litigation Administrator did not specify which issues in the Strike Motion would be moot. (*See id.*)

If Crocker needs additional time to evaluate her options, the Litigation Administrator is also willing to provide Crocker with a later mediation date within the first quarter of 2026. (*Id.* at 7.) While the Litigation Administrator is open to accommodating Crocker's request, he states that he "cannot make individualized exceptions for every party that wants them," because it would "undercut the structure established by the Procedures Order to ensure that these cases

9

proceed smoothly and uniformly." (*Id.* at 6-7.) Furthermore, the Litigation Administrator states he cannot accommodate Crocker if she wants exemptions from other mediation provisions because it would be unfair to the defendants that complied with the Procedures Order. (*Id*. at 7.)

The Litigation Administrator argues that absent evidence of financial hardship, Crocker's request to require Celsius to pay her share of mediation fees is unfair and would place her in a privileged position compared to other defendants. (*Id.*) Should Crocker seek additional relief that would result in different treatment from other similarly situated defendants, the Litigation Administrator urges this Court to deny such a request. (*Id.*)

The Litigation Administrator correctly notes that Crocker's request to stay mediation is moot. (*Id.*) The Litigation Administrator is willing to grant Crocker additional time to select a mediator, engage in individual mediation, and to schedule Crocker's mediation for later in the first quarter of 2026. (*Id.* at 8.) Accordingly, it is unnecessary for this Court to grant the Stay Motion because the Litigation Administrator is already willing to delay the mediation.

In addition, the relief sought in the Strike Motion is largely rendered moot. In the Strike Motion, Crocker seeks to strike the selection of the mediator and asks the Court to grant additional time for selection of a mediator. (Strike Motion at 5.) As discussed above, the Litigation Administrator is willing to accommodate both requests. (Limited Opposition at 8.)

/ / / / /

/ / / / /

/ / / / /

10

## IV.  CONCLUSION

For the reasons discussed above, the Court **DENIES** both the Strike Motion and Stay Motion.

**IT IS SO ORDERED.**

Dated:     March 6, 2026
           New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge